**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 8 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CITY OF LOS ANGELES,<br><br>Petitioner,<br><br>CITY OF CULVER CITY,<br><br>Petitioner-Intervenor,<br><br>v.<br><br>STEPHEN M. DICKSON, in his official capacity as Administrator, Federal Aviation Administration; FEDERAL AVIATION ADMINISTRATION,<br><br>Respondents. | No.   19-71581<br><br>MEMORANDUM* |

On Petition for Review of an Order of the
Federal Aviation Administration

Argued and Submitted June 11, 2021
Pasadena, California

Before:  MURGUIA, BADE, and LEE, Circuit Judges.

The City of Los Angeles and Culver City ("Cities") petition for review of two

Federal Aviation Administration ("FAA") actions pursuant to 49 U.S.C. § 46110.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

We grant the petition in part and dismiss the petition in part.

1.      The Cities argue that the FAA violated the National Environmental Policy Act ("NEPA"), the National Historic Preservation Act ("NHPA"), and section 4(f) of the Department of Transportation Act by issuing three amended flight procedures for aircraft arriving at Los Angeles International Airport (the "amended Arrival Routes") without environmental review.  As an initial matter, we conclude that we have jurisdiction over the petition for review of the amended Arrival Routes.  *See S. Cal. Aerial Advertisers' Ass'n v. FAA*, 881 F.2d 672, 675 (9th Cir. 1989) (explaining that we have an obligation to determine the scope of our own jurisdiction).

Under 49 U.S.C. § 46110(a), we may review "an order issued by" the FAA based on a petition filed "not later than 60 days after the order is issued" unless "there are reasonable grounds for not filing by the 60th day."  Here, as the FAA concedes, the amended Arrival Routes constitute a final, reviewable agency order because the amended Arrival Routes are supported by a reviewable administrative record, definitively state the FAA's position, have a direct and immediate effect on the Cities, and require immediate compliance.  *See MacLean v. Dep't of Homeland Sec.*, 543 F.3d 1145, 1149 (9th Cir. 2008) (per curiam) (citing *Gilmore v. Gonzales*, 435 F.3d 1125, 1132 (9th Cir. 2006)).  Although Los Angeles petitioned for review of the amended Arrival Routes more than a year after the amended Arrival Routes were issued, and Culver City moved to intervene in the action several weeks after

2

that, the Cities had reasonable grounds for the delay because the FAA had agreed to toll the statutory petition-for-review deadline while the Cities attempted to work with the FAA to address their concerns.[1]  *See Kashem v. Barr*, 941 F.3d 358, 391 (9th Cir. 2019) (explaining that there were "reasonable grounds" for delay based on the government's concession); *see also City of Phoenix v. Huerta*, 869 F.3d 963, 970 (D.C. Cir. 2017).  Therefore, we have jurisdiction over the Cities' NEPA, NHPA, and section 4(f) claims.

NEPA requires the FAA and other federal agencies to evaluate and disclose the environmental impacts of their actions.  *See* 42 U.S.C. § 4332; *see also Morongo Band of Mission Indians v. FAA*, 161 F.3d 569, 575 (9th Cir. 1998).  The NEPA process is intended to ensure that "before an agency can act," the agency considers potential environmental impacts.  *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349, 353 (1989).  The FAA did not do so here.[2]  In compiling the

---

[1] We grant Los Angeles's motion to consider the tolling agreement (Doc. 115), which provides that Los Angeles had "reasonable grounds" to delay filing a petition for review of the amended Arrival Routes.

[2] We grant the two pending motions to supplement the record, *see* Doc. 50 (FAA's Cross-Motion to Supplement the Record); Doc. 63 (Los Angeles's Motion to Complete the Record, alternatively seeking supplementation of the record), because the supplemental documents the FAA and Los Angeles offer are necessary to determine whether the FAA properly "considered all relevant factors and . . . explained its decision." *See Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (quoting *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)).  However, we deny Los Angeles's request to *complete* the record (Doc. 63), because there is no indication the FAA relied on these documents

administrative record for the amended Arrival Routes, the FAA pointed to two documents as the basis for its decision—a memo "confirming" the agency had completed the necessary environmental review, and an "Initial Environmental Review" document. But both documents postdated the publication of the amended Arrival Routes by several months. Accordingly, they cannot constitute the FAA's NEPA review. *See id.* Nor can the undated spreadsheet that the FAA points to for the first time during this litigation form the requisite review. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020) ("An agency must defend its actions based on the reasons it gave when it acted.").

The FAA argues that its post hoc Initial Environmental Review document brought the agency into compliance with NEPA by documenting the FAA's application of a categorical exclusion to NEPA review. A categorical exclusion excuses an agency from preparing an environmental impact statement or environmental assessment for a particular action. *See Sierra Club v. Bosworth*, 510 F.3d 1016, 1018–19 (9th Cir. 2007). But a categorical exclusion may not be applied when there are "extraordinary circumstances in which a normally excluded action

in performing its environmental review. *See Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989).

We also grant Los Angeles's Motion for Judicial Notice (Doc. 66), but we deny the FAA's Motion to Consider Formatted Document (Doc. 79) as moot, as this document already exists in the record.

may have a significant environmental effect." *Id.* at 1019 (citation omitted). We review an agency's determination that a categorical exclusion applies to a particular action, and that there are no extraordinary circumstances preventing application of the categorical exclusion, under the arbitrary-and-capricious standard. *See id.* at 1022. This standard requires the agency to "articulate a rational connection between the facts found and the conclusions reached." *Id.* at 1023 (citation omitted). In addition, "when an agency has taken action without observance of the procedure required by law, that action will be set aside." *Id.*

Here, the FAA's procedures state that "extraordinary circumstances" exist, and a categorical exclusion may not be applied, when a proposed action is "likely to be highly controversial on environmental grounds," meaning that "there is a substantial dispute over the degree, extent, or nature of a proposed action's environmental impacts." The Cities maintain that, based on the FAA's own definition, there were such "extraordinary circumstances" here because there was significant controversy about the extent to which aircraft were flying below the minimum altitudes on the original Arrival Routes. In other words, the Cities assert that there was a substantial dispute over the noise and other environmental impacts that the amended Arrival Routes would cause, and the public controversy surrounding the Arrival Routes was evidence of this dispute. But the FAA failed to address the record evidence indicating that there was a dispute over the potential

5

effects of the amended Arrival Routes in the Initial Environmental Review, in contravention of its own procedures. Therefore, the FAA's application of a categorical exclusion was arbitrary and capricious, in violation of NEPA. *See Sierra Club*, 510 F.3d at 1023; *see also City of Phoenix*, 869 F.3d at 972–73. Accordingly, we grant the Cities' petition for review of the amended Arrival Routes with respect to the NEPA claims.

NHPA requires an agency to consider the effects of proposed actions on historic structures. *See Morongo Band*, 161 F.3d at 581. "In fulfilling this obligation, agencies must consult with certain stakeholders in the potentially affected areas, including representatives of local governments." *City of Phoenix*, 869 F.3d at 971; *see* 36 C.F.R. §§ 800.2(a)(4), (c)(3); 800.5(c). We review an agency's NHPA decisions "under the arbitrary and capricious standard." *Morongo Band*, 161 F.3d at 573. The FAA makes no argument that it sought to comply with NHPA before issuing the amended Arrival Routes. But the FAA contends that its post hoc Initial Environmental Review document sufficiently analyzed the effects of the amended Arrival Routes on historic structures. That may be, but the NHPA requires more—specifically, consultation. Here, the FAA's admitted failure to consult with Los Angeles or Culver City violated NHPA, even if the FAA properly determined that there would be no adverse impacts on historic properties. *See id.* at 581; *see also City of Phoenix*, 869 F.3d at 971 (explaining that "the FAA's failure

6

to notify and provide documentation to the City of the agency's finding of no adverse impact violated regulations under the Preservation Act, and denied the City its right to participate in the process and object to the FAA's findings"); 36 C.F.R. § 800.5(c). Accordingly, we also grant the petition for review with respect to the NHPA claim.

Finally, section 4(f) of the Transportation Act requires an agency within the Department of Transportation to assess whether a transportation project will "use" a "public park," "recreation area," or "historic site of national, State, or local significance." *See* 49 U.S.C. § 303(c). The term "use" includes "constructive use," such as elevated noise levels that "substantially interfere" with the use of a property. *Morongo Band*, 161 F.3d at 583. According to the FAA's procedures, a responsible FAA official "must consult all appropriate Federal, state, and local officials having jurisdiction over the affected Section 4(f) properties when determining whether project-related impacts would substantially impair the resources." Fed. Aviation Admin., Order No. 1050.1F, Environmental Impacts: Policies and Procedures § B-2.2.2 (July 16, 2015). As with an agency's NEPA and NHPA determinations, "[d]ecisions regarding . . . the Transportation Act are similarly reviewed under the arbitrary and capricious standard." *Morongo Band*, 161 F.3d at 573. Here, the FAA ultimately completed its section 4(f) analysis in the post hoc Initial Environmental Review document, but there is no evidence that the FAA ever consulted with the Cities regarding the affected section 4(f) properties the FAA identified. What's

more, the FAA did not acknowledge its section 4(f) consultation obligation in the Initial Environmental Review, nor explain why it was excused from consulting with the Cities. Therefore, the FAA also violated its own section 4(f) procedures, and we grant the petition for review with respect to the section 4(f) failure-to-consult claim.

In sum, we conclude that the FAA violated NEPA, NHPA, and section 4(f) in issuing the amended Arrival Routes. Although the typical remedy when we hold an agency's action unlawful is vacatur, we have discretion to remand without vacatur "when equity demands." *Pollinator Stewardship Council v. U.S. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) (quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995)). In exercising this discretion, we weigh the seriousness of the agency's error against the disruptive consequences of vacating the agency's action. *Id.* Although the failure to complete proper environmental review is a serious error, the FAA has asserted that the consequences of vacating the amended Arrival Routes would be severely disruptive in terms of cost, safety, and potential environmental consequences, and the Cities have offered nothing to counter the FAA's contentions about these harmful effects.[3] Accordingly, we exercise our discretion to remand the amended Arrival Routes to the FAA without vacatur, leaving the amended Arrival Routes in place while the FAA undertakes the proper

---

[3] We grant the FAA's Motion to Consider Two Documents (Doc. 76) in part with respect to the Stewart Declaration, which describes the potential effects of vacatur. We deny the motion as moot with respect to the internal FAA emails.

NEPA analysis and NHPA and section 4(f) consultation.

2.    The Cities also argue that the FAA violated the Administrative Procedure Act, NEPA, and due process by posting a disclaimer (the "Notice") on the FAA's "Instrument Flight Procedure Information Gateway" website.  The Notice states that the FAA will not consider environmental comments submitted through this particular website, which is meant for technical feedback from "civil aviation organizations, affected military and civil air traffic control facilities, and aircraft owners and sponsors."  Because the Notice does not have a direct and immediate effect nor require immediate compliance, *see MacLean*, 543 F.3d at 1149, it is not a final order within the meaning of 49 U.S.C. § 46110, and we lack jurisdiction to review it.  Accordingly, we dismiss the Cities' claims regarding the Notice.

**PETITION GRANTED IN PART AND DISMISSED IN PART.[4]**

---

[4] Each party shall bear their own costs.